**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GOOD BANANA, LLC, | CIVIL ACTION NO. |
| Plaintiff, | 3:20-CV-01368 (AVC) |
| v. | |
| BML REC, LLC, | |
| Defendant. | November 10, 2020 |

## DEFENDANT BML REC, LLC'S  REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER FOR LACK OF PERSONAL JURISDICTION

Defendant BML Rec, LLC ("BML") respectfully submits this Reply Brief to Plaintiff Good Banana, LLC's ("Good Banana") Opposition to BML Rec, LLC's Motion to Dismiss or Transfer for Lack of Personal Jurisdiction (the "Opposition"). BML also respectfully reiterates its request for oral argument on its motion if oral argument would be helpful to the Court in determining that BML has insufficient contacts with Connecticut for the exercise of personal jurisdiction.

Good Banana's Opposition, like its Complaint, fails to assert any facts which would provide a basis for this Court's exercise of personal jurisdiction over BML. Furthermore, Good Banana seeks to ignore (or otherwise misunderstands) the single transaction which connects BML to the product designs to which Good Banana now lays claim.—That transaction was a liquidation sale in Indiana wherein BML purchased only assets of Big Mouth, including the product designs at issue from a court-appointed receiver. Additionally, Good Banana seeks to improperly use BML's non-interactive website as a means of obtaining personal jurisdiction over BML, in clear violation of settled precedent from this Court and the United States Supreme Court.

BML has taken no actions within the State of Connecticut which relate, in any way, to the designs at issue in this case, or which relate in any way to the claims Plaintiff presently makes

{N5723972}

**ORAL ARGUMENT REQUESTED**

about such designs. The arguments and evidence set forth in Good Banana's Opposition reveal Good Banana's inability to demonstrate the existence of any contacts between BML and Connecticut to justify the exercise of personal jurisdiction. They also demonstrate an impermissible attempt to leverage the federal court in Connecticut to subject a foreign defendant to suit in a state with which the defendant has no meaningful contacts. Accordingly, because none of the evidence adduced by Good Banana demonstrates the existence of any related contacts between BML and the State of Connecticut which would support this Court's exercise of personal jurisdiction over BML, the granting of BML's motion would be appropriate.

## FACTUAL BACKGROUND

Good Banana's Opposition spends a considerable amount of time recounting factual assertions which are irrelevant to the personal jurisdiction inquiry—among them being the residence of Mr. Steve Wampold, ("Mr. Wampold"), the state of the designs' original conception, and the state of organization for several entities aligned with the Plaintiff. (See Opposition, pages 1-2). None of these factual assertions have anything to do with the jurisdictional question presently before this Court. Nevertheless, in order to eliminate some of the confusion surrounding the facts of this case, BML recounts the following clarifying facts:

Mr. Wampold is the founder of BigMouth, Inc ("BigMouth Connecticut")—a Connecticut wholesaler of toys, trinkets, inflatables, and other novelties. (Decl. Fournier, ¶ 2). On November 14, 2016, Mr. Wampold sold all of BigMouth CT's assets to an Indiana entity bearing a similar name ("BigMouth Indiana"). (Decl. Fournier, ¶3). Also on November 14, 2016, Mr. Wampold began his employment with BigMouth Indiana as its "Senior Vice President of Creative Development" and was contemporaneously elected to its board of directors. (Decl. Fournier, ¶4). During his time with BigMouth Indiana, Mr. Wampold actively participated in the

creation and development of a number of product designs. (Decl. Fournier, ¶10).

Mr. Wampold worked for BigMouth Indiana on a number of occasions, and during each instance, he executed an employment agreement. (Decl. Fournier, ¶¶3;6). In these employment agreements, Mr. Wampold agreed that "[a]ny and all inventions, improvements,… designs,… concepts or ideas, or expressions thereof," which were "conceived or developed" during the course of his employment to BigMouth Indiana would be "the sole and exclusive property" of BigMouth Indiana. (Decl. Fournier, ¶11). During a period of employment beginning on December 19, 2019, Mr. Wampold worked with BigMouth Indiana's development team to develop and improve various new product designs, including the "Dream Floaties" and "Floor Floaties" designs that now form the basis of this dispute. (Decl. Fournier, ¶9). As these designs were developed during Mr. Wampold's employment with BigMouth Indiana, they belonged exclusively to BigMouth Indiana. (Decl. Fournier, ¶13). Furthermore, consistent with his employment agreements, Mr. Wampold acknowledged BigMouth Indiana's ownership of the designs in various emails to third parties. (Decl. Fournier, ¶13). True and correct copies of the emails sent by Mr. Wampold are attached to the Declaration of Bryan Fournier.

On April 8, 2020, as the COVID-19 pandemic negatively impacted the business world, BigMouth Indiana defaulted on a credit agreement. (Decl. Fournier, ¶14). On or about April 25, 2020, a receiver (the "Receiver") was appointed by the Commercial Court of Marion County, Indiana, Cause No.: 49D01-2004-PL-014426, to oversee and liquidate BigMouth Indiana's business. (Decl. Fournier, ¶17).  While the background provided to this point is pertinent to understanding the issues, none of the above-stated facts bear on any purported ability to assert personal jurisdiction over BML in Connecticut. The facts which are relevant to this Court's determination of the personal jurisdiction question must focus on BML, not Plaintiff, to wit:

On July 17, 2020, the Receiver entered into an asset purchase agreement in Indiana with BML—a Nebraska limited liability company having its principal place of business in Nebraska—dated July 17, 2020 (the "APA"). (Decl. Fournier, ¶18). In the APA, the Receiver sold BML, *inter alia*, "[a]ll [of the] intellectual property" belonging to BigMouth Indiana, which included the "Dream Floaties" and "Floor Floaties" designs. (Decl. Fournier, ¶18). A true and correct copy of the APA is attached to the Declaration of Bryan Fournier. In addition to BigMouth Indiana's intellectual property, BML also acquired the website domain that Good Banana references in its Opposition[1]—bigmouthinc.com. (Decl. Fournier, ¶24). The bigmouthinc.com website, while accessible to individuals within Connecticut, does not allow for the purchase of BML's products, nor does it direct any advertising or marketing into Connecticut specifically. (Decl. Fournier, ¶¶25;38). Instead, the website functions more like a "digital billboard," advertising BML's products to users and directing them to third party websites where shopping may be conducted. (Decl. Fournier, ¶26). As the "Dream Floaties" and "Floor Floaties" designs have not yet even been developed by BML, such designs are not advertised on the bigmouthinc.com website (a pertinent fact Good Banana ignores). (Decl. Fournier, ¶27). Indeed, the "bigmouthinc.com" website makes no reference whatsoever to either design (which Good Banana also ignores). (Decl. Fournier, ¶27). As such, and in accordance with the local rules, this Reply will not recount all of the facts originally laid out in BML's Memorandum of Law which establish the lack of minimum contacts between BML and Connecticut, and instead focus on specific responses raised in the Opposition. However, BML would respectfully direct the Court to pages 3-4 of its Memorandum (and the attached Declarations) for the jurisdictional facts relevant to its motion and note that those facts, rather than the ones Good Banana attempts to

---

[1] See Opposition, Page 7.

highlight, are relevant and dispositive as to jurisdiction in Connecticut.

## ARGUMENT

In its Opposition, Good Banana ineffectively focuses on the fact that BML has sold unspecified products to residents of Connecticut. (Opposition, Page 3). Good Banana, however, ignores the fact that such sales are unrelated to—and are thus, irrelevant to—the personal jurisdiction issue presently before this Court.

As the United States Supreme Court has recently observed, "[i]n order for a state court to exercise specific jurisdiction, the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,* 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017) (internal citations omitted). Likewise, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create *a substantial connection* with the forum State." *Walden v. Fiore,* 571 U.S. 277, 284, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) (emphasis added). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb,* 137 S. Ct. at 1780. "For a court to exercise specific jurisdiction over a claim there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Id.* at 1776. "When no such connection exists, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

Here, any sales of unrelated products that BML might have made to residents of Connecticut have nothing to do with the present controversy and are therefore irrelevant to a personal jurisdiction analysis. BML has not developed, marketed, or otherwise attempted to monetize the designs at-issue within the State of Connecticut (or anywhere yet for that matter).

As such, Good Banana's claims of ownership as to the specific, undeveloped "Dream Floaties" and "Floor Floaties" designs have nothing to do with any sales that BML might have made of other, unrelated products into Connecticut. Put simply, Good Banana's claims do not "arise out of or relate to" BML's alleged contacts with Connecticut. *See Id.* at 1780. As no connection exists between the sale of BML's products and the present controversy, the extent of BML's unconnected activities within Connecticut are irrelevant to the present analysis. *Id.* at 1776.

In its Opposition, Good Banana relies heavily on *ICG Am., Inc. v. Wine of the Month Club, Inc.*,[2]. (See Opposition, Pages 9-10). *ICG,* however, is readily distinguishable from the case at bar. In *ICG,* the plaintiff sought a declaration that the defendant's various trademarks for "Wine of the Month Club"—which the defendant had been using to actively solicit business in Connecticut, and which the defendant's interactive website used for advertising—were invalid and unenforceable. *Id.* at *1. Unlike the case at bar, however, the controversy in *ICG* actually *arose from* the defendant's contacts with the State of Connecticut.

In *ICG,* the plaintiff's claims hinged upon plaintiff's allegations that the defendant had profited from the use of the trademarks at issue by the sale of the defendant's services within Connecticut. As such, "[the] defendant [should have] anticipate[d] being haled into court in Connecticut to defend itself against claims *related to the use of its mark … there*." *Id.* at *7. (Emphasis added). No such connection can be drawn between the sale of BML's unrelated products in Connecticut and the present controversy. It cannot be said that Good Banana's claims of ownership as to the Dream Floaties and Floor Floaties designs "arose from" the sale of other, unrelated products by BML into Connecticut. Thus, any sales BML might have made into Connecticut are unrelated and irrelevant to this Court's determination of personal jurisdiction

---

[2] No. 3:09-CV-133 (PCD), 2009 WL 2843261, at *7 (D. Conn. Aug. 28, 2009).

here. *See Bristol-Myers Squibb*, 137 S. Ct. at 1776 (where there is no affiliation between the forum and the underlying controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State").

In addition to the fact that BML's sales into Connecticut are utterly unrelated to the present dispute, *ICG* may be further distinguished on the grounds that BML's website was not sufficiently interactive to support an exercise of jurisdiction. As this Court observed in *ICG*, "[t]he mere existence of a website accessible from Connecticut does not demonstrate purposeful availment." *Id.* at *6 (citing *Divicino v. Polaris Indus*., 129 F. Supp. 2d 425, 432–33 (D. Conn. 2001)). Likewise, "[c]reating a site… without more, it is not an act purposefully directed towards the forum state." *Edberg v. Neogen Corp*., 17 F. Supp. 2d 104, 114 (D. Conn. 1998). Indeed, "[i]f jurisdiction were [to] be based upon a defendant's mere presence on the Internet, this would lead to a defendant's being subjected to jurisdiction on a worldwide basis and would eviscerate the personal jurisdiction requirements as they currently exist." *Id*. at 115. As such, websites must be sufficiently "interactive" to "permit personal jurisdiction to be exercised over a defendant." *ICG*, 2009 WL 2843261, at *4.

To that end, this Court acknowledged in *ICG* that, for personal jurisdiction purposes, a "website … [is] passive… [if] '[i]nternet users [can]not order products directly from the Web site.'" *Id.* at *5. *See also*, *Marlin Firearms, Co. v. Wild W. Guns, LLC*, No. 3:09-CV-921 RNC, 2013 WL 2405510, at *6 (D. Conn. May 31, 2013) (declining to exercise general personal jurisdiction over a foreign defendant who had a passive website which provided information to potential buyers without an opportunity to buy); *On-Line Techs. v. Perkin Elmer Corp*., 141 F. Supp. 2d 246, 266 (D. Conn. 2001) (holding that a website which provides "no provision for purchasing" and which directs the user to another website to complete purchases was

insufficiently interactive to establish personal jurisdiction under Connecticut's corporate long arm statute); *Neogen*, 17 F. Supp. 2d at 114 (observing that a website which advertised products but which required users to call an "800" number to place orders was "similar to an advertisement in a national magazine or newspaper" and was thus, not sufficiently "interactive" for personal jurisdiction purposes).

In the case at bar, BML's website does not permit users to purchase BML's products. (Decl. Fournier, ¶25). Indeed, BML's website does not even include prices for the various products displayed. (Decl. Fournier, ¶25). Instead, users must navigate to a third party's website, or else reach out to BML directly, in order to purchase any of the products seen on the bigmouthinc.com site (which, as to the designs/products at issue, has never occurred, nor could have occurred because BML has not developed and offered for sale any product based on the designs at issue). (Decl. Fournier, ¶¶25-27). As such, BML's website is analogous to the defendants' respective websites in *Marlin Firearms, On-Line Techs,* and *Neogen*, which this Court held to be insufficiently interactive to support an exercise of personal jurisdiction.

In addition to the lack of a sufficiently interactive website to support jurisdiction in this case, the Second Circuit has repeatedly held that sending a cease and desist letter to an alleged infringer, without more, is insufficient to permit the exercise of personal jurisdiction. See *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 548 (2d Cir.2007); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir.1997). Nevertheless, Good Banana again relies on *ICG* for its argument that "sending a cease and desist letter to a Connecticut entity" is sufficient for an exercise of personal jurisdiction here. (See Opposition, Page 9). In *ICG*, however, this Court made clear that the "[d]efendant's contacts with Connecticut involved more than simply sending cease and desist letters." *Id.* at *7. In addition to the "numerous" cease and desist letters the defendant sent to the

plaintiff, "[the] [d]efendant maintained a website which permitted direct purchases by Connecticut residents[] and… deliberately solicited repeat business from these Connecticut customers through e-mail advertising campaigns." *Id*. No analogous facts are present in this case. Here, BML sent a single cease and desist letter to Good Banana, Mr. Wampold, and HolyCow on August 21, 2020, about the designs at issue that BML purchased <u>in Indiana</u>. (Decl. Fournier, ¶¶18;41). Yet, BML has never solicited customers in Connecticut and, as discussed above, does not maintain a website which permits the direct purchase of BML's products (none of which relate to the designs at issue). (Decl. Fournier, ¶¶25-27;34-38). In any case, it must be remembered that Good Banana's inaccurate claims of ownership in the designs at issue here cannot and do not arise from any contacts that BML might have with the State of Connecticut, nor do such claims of ownership establish personal jurisdiction over BML in Connecticut. *See generally Bristol-Myers Squibb,* 137 S. Ct. 1773; *Walden*, 571 U.S. 277. Accordingly, it is appropriate for this Court to grant BML's motion to dismiss or transfer the case to Nebraska.

In its Opposition, Good Banana requests jurisdictional discovery or an opportunity to replead. The Court should deny both requests because no facts exist that would support this Court's exercise of personal jurisdiction over BML for either purpose. While this Court has acknowledged that other courts within the Second Circuit have permitted jurisdictional discovery "where a plaintiff has made less than a prima facie showing but made a 'sufficient start' toward establishing personal jurisdiction," *see Powder Coating Consultants v. Powder Coating Inst,*[3] Good Banana has not made (and cannot make) a 'sufficient start' toward establishing personal jurisdiction in this case as no facts exist which could support jurisdiction here. As BML has demonstrated, none of the contacts Good Banana relies upon are sufficient—or even *relevant*—

---

[3] No. 09CV200(WWE), 2009 WL 3418224, at *1 (D. Conn. Oct. 21, 2009) (citing *Hollins v. United States Tennis Assoc.*, 469 F.Supp.2d 67, 71 (E.D.N.Y.2006)).

to this Court's resolution of the jurisdictional issue. As such, Good Banana should not be permitted to waste the parties' and this Court's time and resources pursuing discovery that can lead nowhere. Jurisdictional discovery would yield only the same evidence discussed here: BML's only connection to the facts of this case (the signing of the APA agreement) occurred in Indiana; conversely, BML's only contacts with the State of Connecticut (as exhaustively recounted in this Memorandum, BML's initial Memorandum in Support of its Motion to Dismiss, and the accompanying declarations) are completely unrelated to this dispute, and thus fail to support an exercise of personal jurisdiction over BML.

Good Banana's request to replead should be denied for precisely the same reasons—no facts exist that could support the exercise of jurisdiction here. Allowing Good Banana to attempt to do so would be to cater to its attempt to leverage the cost of proceedings in a foreign jurisdiction that does not have sufficient contacts with BML.  Finally, it should be noted that Good Banana's argument that "[g]iven the nearly universal adoption and use of virtual hearings and depositions amid the COVID-19 pandemic, it is hardly an inconvenience for BML to be subject to suit in the District of Connecticut as opposed to another district" misses completely the point of assuring proper personal jurisdiction. It does, however, easily support Good Banana's refiling—or this Court's transfer—of this case to the United States District Court for the District of Nebraska, where personal jurisdiction over BML exists and for which Good Banana should have no trouble litigating via virtual hearings and depositions. (See Opposition, Page 10).

## <u>CONCLUSION</u>

Based on the case law and evidence discussed here, as well as in BML's original submissions, BML respectfully asks this court to find that personal jurisdiction is lacking and to dismiss this case or transfer it to the federal court in Nebraska.

Respectfully submitted  this 10th day of November 2020.

                          BML REC, LLC, Defendant,

                          By:   _/s/ James K. Robertson / ct05301 /__
                                    James K. Robertson, Jr. (ct05301)
                                    Carmody Torrance Sandak & Hennessey LLP
                                    50 Leavenworth Street
                                    PO Box 1110
                                    Waterbury, CT 06702
                                    Telephone: (203) 573-1200
                                    Facsimile: (203) 575-2600
                                    JRobertson@carmodylaw.com

                                    *Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

  /s/ James K. Robertson, Jr. / ct05301 /
James K. Robertson, Jr.