### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOOD BANANA LLC, | : | |
|   plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:20-CV-1368 |
| | : | |
| BML REC LLC, | : | |
|   defendant. | : | |

### <u>RULING ON THE DEFENDANT'S MOTION TO DISMISS OR TO TRANSFER</u>

This is an action for a declaratory judgement and permanent injunction in connection with alleged misappropriation of trade secrets.  The plaintiff, Good Banana LLC, (hereinafter "Good Banana") alleges that defendant, BML REC, LLC (hereinafter "BML"), in acquiring assets of now-liquidated BigMouth, Inc., unlawfully obtained, and now asserts ownership over, certain inventions and ideas belonging to Good Banana.  The action is brought pursuant to the Federal Defend Trade Secrets Act (hereinafter "DTSA"), 18 U.S.C. §§ 1836 and 1839, and, in the alternative, common law tenets concerning unjust enrichment.

The defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), on the ground that the court lacks personal jurisdiction over BML, in Connecticut.[1]

---

[1] BML states that the court should dismiss the complaint in its entirety or transfer the case to a forum with personal jurisdiction over it, such as the United States District Court for the District of Nebraska.

The issue presented in this case is whether the court has personal jurisdiction over BML.  For the reasons that follow, the court concludes that it does not and, therefore, the motion to dismiss is granted.

## **FACTS**

An examination of the complaint, memoranda and accompanying affidavits, discloses the following facts:

The plaintiff, Good Banana, is a wholly owned subsidiary of HolyCow Holdings LLC, (hereinafter "HolyCow"), a Connecticut company with a business address of 16 Avalon Lane, Marlborough, Connecticut.  Steve Wampold is a Connecticut resident and the sole owner of HolyCow.  Wampold is an entrepreneur and founder of several companies, including BigMouth Inc. (hereinafter "BigMouth Connecticut"), formerly a Connecticut company. Wampold's companies specialize in selling novelties such as pool floats, comical mugs and other "gag" gifts.

The defendant, BML is a limited liability company with its principle place of business in Nebraska.

On November 16, 2016, Wampold sold the assets of BigMouth Connecticut to a new buyer, who subsequently formed an Indiana corporation also called BigMouth, Inc. (hereinafter "BigMouth Indiana").

After the sale, BigMouth Indiana employed Wampold on a full-time basis from January 1, 2018 to November 1, 2018, at

which time he transitioned to part-time employment.  On or about June 30, 2019, Wampold left his position at BigMouth Indiana and formed a new company, HolyCow, in Connecticut.

While working in Connecticut at HolyCow, and a year after he left BigMouth Indiana, Wampold conceived and developed the idea for a children's sleepover airbed, known as "Dream Floaties," and a three-dimensional plush play area mat, known as "Floor Floaties."

At some point after creating Dream Floaties and Floor Floaties, Wampold created Good Banana, a wholly owned subsidiary of HolyCow.  HolyCow subsequently assigned its interests in Dream Floaties and Floor Floaties to Good Banana.

In or around December 2019, Wampold returned to BigMouth Indiana, as its CEO, and collaborated with Good Banana to sell Dream Floaties and Floor Floaties and their accompanying intellectual property rights.  Good Banana asserts that it disclosed the products at issue under the expectation of confidentiality and notes its understanding that both companies would mutually work out the terms of a royalty-bearing licensing agreement.

At some point in 2020, as a result of the COVID-19 pandemic, BigMouth Indiana decided to cease operations.

On or about April 25, 2020, BigMouth Indiana liquidated its assets through a court-appointed receiver in Indiana.  At the

time of the liquidation, Wampold had since resigned as BigMouth Indiana's CEO and did not oversee the sale of the company's assets.

On or about July 17, 2020, BML purchased "[a]ll [of the] intellectual property" belonging to BigMouth Indiana in the court-appointed liquidation.  Good Banana disputes this fact.

Shortly after the acquisition, BML hired two former BigMouth Indiana employees, who desired to work remotely from their homes in Connecticut.  One of these employees has since relocated to New York.  Neither employees' job duties with BML relate to the designs at issue in this case.

On August 21, 2020, BML sent a demand letter to Good Banana, advising it to cease and desist from use of Dream Floaties and Floor Floaties.  BML argues that it owns the intellectual property rights to these products, as a result of its acquisition of BigMouth Indiana.  Good Banana responds that Dream Floaties and Floor Floaties did not belong to BigMouth Indiana because Good Banana never assigned or conveyed its interests in the products to BigMouth Indiana.  Good Banana therefore argues that BML's acquisition of BigMouth Indiana did not include the acquisition of Dream Floaties and Floor Floaties because the products never belonged to BigMouth Indiana.

On September 11, 2020, Good Banana subsequently filed this case, seeking a declaratory judgement and an injunction with respect to BML's alleged misappropriation of trade secrets.

BML has filed a motion to dismiss, arguing it lacks sufficient contacts with Connecticut to establish personal jurisdiction over the defendant.

## STANDARD

A court must grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) if the plaintiff fails to establish personal jurisdiction over the defendant.  "The plaintiff bears the burden of showing that the court has jurisdiction over the defendant.  Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."  Metropolitan Life Ins. V. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) (citations omitted).  On a motion challenging this court's jurisdiction, the court may look to documents outside the pleadings.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); Kamen v. American Telephone & Telegraph Co., et al., 791 F.2d 1006, 1011 (2d Cir. 1986); Exchange Nat. Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1130-31 (2d Cir. 1976).  "[W]here ... the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of jurisdiction."  Ball v.

<u>Metallurgie Hoboken-Overpelt, S.A.</u>, 902 F.2d 194, 197 (2d Cir. 1990).  "[A]ll pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor."  <u>Hoffritz for Cutlery, Inc. v. Amajac, Ltd.</u>, 763 F.2d 55, 57 (2d Cir. 1985).

## <u>DISCUSSION</u>

BML argues that it is not subject to personal jurisdiction in Connecticut.  Specifically, it argues that its contacts in the state fail to satisfy either Connecticut's long-arm statute or the requirements of due process.

Good Banana argues in opposition that BML's conduct satisfies both the applicable long-arm statute and concepts of due process.

Unless the defendant contractually waives personal jurisdiction, the court must consider whether Connecticut law authorizes the assertion of either general[2] or specific personal jurisdiction over the defendant. <u>See</u> <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 127 (2014).  "'General jurisdiction renders a defendant amenable to suit on all claims,' while '[s]pecific

---

[2] General jurisdiction exists when a "corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'"  <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 139 (2014) (alteration in original) (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011)).  "[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business . . . ." <u>Brown v. Lockheed Martin Corp</u>., 814 F.3d 619, 627 (2d Cir. 2016).

jurisdiction renders a defendant amenable to suit only on those claims that arise from conduct related to the forum.'" Affiliated FM Insurance Company v. Kuehne + Nagel, Inc., 328 F. Supp.3d 329, 339 (S.D.N.Y. 2018) (quoting Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch, No. 14 Civ. 1568, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015)).  The issue in this case is whether the court may exercise specific jurisdiction over BML.

"In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state."  Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); see also Needle v. True N. Equity, LLC, No. 3:19-CV-372 (MPS), 2020 WL 1550219, at *3 (D. Conn. Apr. 1, 2020) (stating that to "establish jurisdiction under this section, the plaintiff also must show that its cause of action arises from the defendant's business activity in the state."). If the court determines that "the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws" it must then "assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process."  Metropolitan Life Ins. V. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) (citing Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990)).

## I. **Connecticut's Long-Arm Statute**

BML argues that its contacts with Connecticut are too sporadic and limited to subject it to the relevant portions of Connecticut's long-arm statute.  Specifically, BML argues that is has not committed a tort within Connecticut and that it has not caused injury in the state.  BML asserts that this cause of action does not arise from BML's limited contacts with Connecticut.

Good Banana argues in opposition that BML falls within Connecticut's long-arm statute because BML has: (1) committed a tort within Connecticut, or (2) committed a tort outside of Connecticut with injury occurring in the state.  Good Banana further contends that BML is subject to Connecticut's long-arm statute for an injury in Connecticut because BML regularly solicits business in Connecticut, or it should have reasonably expected its acquisition of trade secrets to have consequences in Connecticut, and it derives substantial revenue from commerce in the state.

The relevant portion of Connecticut's long-arm statute[3] provides as follows:

> "As to a cause of action arising from any of the acts
> enumerated in this section, a court may exercise personal

---

[3] Connecticut's general long-arm jurisdiction provision, Conn. Gen. Stat. § 52-59b, applies to foreign LLCs like BML. See Matthews v. SBA, Inc., 89 A.3d 938, 961 (2014) (holding that Connecticut's "general long arm jurisdiction provision, § 52-59b, rather than [Connecticut's] corporation specific long arm provision, § 33-929, applies to foreign LLCs.").

jurisdiction over any nonresident individual, foreign
partnership or foreign voluntary association, . . . who in
person or through an agent:  (1) Transacts any business[4]
within the state;  (2) commits a tortious act within the
state . . . ; (3) commits a tortious act outside the state
causing injury to person or property within the state . . .
, if such person or agent (A) regularly does or solicits
business, or engages in any other persistent course of
conduct, or derives substantial revenue from goods used or
consumed or services rendered, in the state, or (B) expects
or should reasonably expect the act to have consequences in
the state and derives substantial revenue from interstate
or international commerce . . . .

Conn. Gen. Stat. § 52-59b(a).

For the following reasons, the court concludes that BML's
contacts with Connecticut fail to rise to the requisite level to
trigger personal jurisdiction under Connecticut's long-arm
provisions.

**(a)   <u>Tort in Connecticut</u>**

BML argues that it has not committed a tort within
Connecticut and, therefore, does not fall under the first
provision of the long-arm statute.  Specifically, BML states
that it could not have committed a tort in Connecticut because
it "has taken no actions on the designs/products at issue in
Connecticut to date."

Good Banana argues in opposition that jurisdiction exists
over BML because its conduct amounts to commission of a tort in

---

[4] Recently, this court noted that "[t]he term 'transacting business,' as used
in [Section] 52-59b(a)(1), is not broadly interpreted in Connecticut."
<u>Plimpton v. Bank of Jackson Hole</u> 2021 WL 765243 at *14 (D. Conn. Feb. 26,
2021).

Connecticut.  Specifically, Good Banana maintains that the tort of misappropriation of its trade secrets has occurred in the state.

The facts show that any alleged acquisition or misappropriation of the trade secrets in question took place during a liquidation, through a court-appointed receiver, in Indiana.  Additionally, if BML is committing the tort of misappropriation of Good Banana's trade secrets, BML is doing so in Nebraska, its principal place of business.  BML has no office in Connecticut and did not acquire the trade secrets, if at all, in the state.

For these reasons, the court concludes that BML's actions do not amount to commission of a tort within the state, and therefore, it is not subject to this section of Connecticut's long-arm statute.

(b)  **Injury in Connecticut**

BML states that it is not liable under the second provision of Connecticut's long-arm statute because no injury has occurred in Connecticut.  Specifically, BML argues that even if the intellectual property at issue belongs to Good Banana, the situs of injury took place in Indiana, not Connecticut and, furthermore, "BML has taken no actions on the designs/products at issue in Connecticut to date."  BML acknowledges that the second circuit has not definitively addressed the question of

where an injury lies for purposes of jurisdiction in this type
of case.  It states that "[i]n any case, this Court need not
resolve the question of where the injury occurs in an
intellectual property dispute here, in that Good Banana has also
failed to establish (and cannot establish) that 'its cause of
action arises from' BML's business activities conducted within
Connecticut."

Good Banana responds that BML's conduct amounts to a
tortious act outside of the Connecticut, causing injury in the
state.  Specifically, Good Banana argues that ownership or
misappropriation of their intellectual property constitutes a
tortious act that has caused injury to its property within
Connecticut.

In Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
171 F.3d 779, 791 (2d Cir. 1999), addressing similar language in
a New York long-arm statute, the second circuit noted that
"courts determining whether there is injury in [the forum state]
sufficient to warrant . . . jurisdiction must generally apply a
situs-of-injury test, which asks them to locate the original
event which caused the injury . . . ."  Bank Brussels Lambert v.
Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999)
(internal quotations omitted).  "[T]he situs of injury is the
location of the original event which caused the injury, not the
location where the resultant damages are subsequently felt by

plaintiff."  Id.  "This 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort."  Id.[5]

In the present case, the original event which caused the injury took place in Indiana, during the sale and acquisition of BigMouth Indiana.  Therefore, under the situs-of-injury test, the location of Good Banana's injury, the misappropriation, is Indiana, not Connecticut.  Although the consequences may eventually be felt in Connecticut, the second circuit has generally found this to be insufficient to meet the situs-of-injury test.[6]  See Banker v. Esperanza Health Sys., 201 Fed. Appx. 13, 16 (2d Cir. 2006) (holding that, even though consequences may eventually be felt in New York, the New York

---

[5] For example, in a case of alleged sexual assault that took place in New York, this court determined that the situs of injury was New York, not Connecticut, because the original event that caused the injury, the assault, took place in New York.  Therefore, the Connecticut district court did not have jurisdiction over the defendant. See Robb v. Robb, 620 F. Supp. 2d 282, 287-88 (D. Conn. 2009).

[6] Other circuits, such as the third circuit, have adopted the conclusion that the situs of injury for intellectual property is the residence of the owner. See Horne v. Adolph Coors Co., 684 F.2d 255, 259 (3d Cir. 1982) (determining that "insofar as the situs of the property damaged by the alleged wrongdoing is a concern, both a state trade secret and a patent should be deemed to have their fictional situs at the residence of the owner.").  However, the second circuit has yet to adopt this reasoning. See Penguin Group (USA) Inc. v. Am. Buddha, 609 F.3d 30, 36 n.4 (2d Cir. 2010) ("There is a possible question at the threshold that neither the district court nor the parties have addressed and which we do not here decide: whether [intellectual property] -- in and of itself an intangible thing -- has a physical location for jurisdictional purposes and, if so, what that location is.").

court had no jurisdiction over the defendant attorney because the situs-of-injury was Texas or California, where the defendants originally devised their scheme to withhold payments).

However, regardless of whether Good Banana can assert a sufficient injury in Connecticut,[7] it has failed to satisfy the additional requirements that BML conduct sufficient business activities in Connecticut or should reasonably expect its act(s) "to have consequences in the state . . . ," and "derives substantial revenue" therefrom.

**(c) Business in Connecticut**

BML argues that it does not regularly solicit business or derive substantial revenue from Connecticut, as required by the "injury in Connecticut" portion of the statute.  BML states that its few contacts in Connecticut are not only insufficient, but are also not related to the underlying dispute.  Specifically, BML notes that its two Connecticut employees had nothing to do with the intellectual property at issue here.  It also maintains that the act of sending a cease and desist letter to Good Banana in Connecticut, fails to provide the requisite connection to the state.  According to BML, it did not reasonably expect any of its acts to have consequences in Connecticut.  At the time of

---

[7] As previously noted, BML has not begun using any of the trade secrets in question and, therefore, there is dispute as to whether and to what extent there has been a quantifiable injury.

the alleged acquisition of the intellectual property at issue,
BML was unaware that a Connecticut company claimed ownership of
them.

Good Banana responds that BML regularly conducts business
in the state through its website and "through agents that are
located throughout Connecticut," "including for instance,
American Eagle Outfitters, Bed Bath & Beyond, Kohl's, Spencer's,
Target, Urban Outfitters, Walgreens, and Walmart."
Specifically, with respect to BML's website, Good Banana
maintains that BML "sells its products direct-to-consumers
through a link to Amazon.com . . . ."  and, therefore, "BML
regularly does or solicits business in the State of Connecticut"
or should have reasonably expected its actions to have
consequences in the state.  Good Banana also states that BML
should have reasonably expected its cease and desist letter,
sent to Good Banana in Connecticut, to have consequences in the
state.

BML replies that its website activity fails to rise to the
requisite level of activity in Connecticut.  Specifically, it
states that its website does not permit direct purchases from
BML, but instead directs customers to third parties to complete
a purchase.  BML further points out that, regardless, the
products that are the subject of this lawsuit are not available
on the website, as it has not begun to develop them.  Therefore,

any such sales in Connecticut are not relevant to the claim in this case.  With respect to the cease and desist letter, BML states that relevant case law dictates that such communications are insufficient to provide a basis to satisfy this portion of the statute.

In a sur-reply, Good Banana reminds the court that, at this early stage of the proceedings, it must construe the pleadings and affidavits in its favor.  It notes that it need only provide a "prima facie" showing of personal jurisdiction and that any doubt should be resolved in its favor.  Good Banana avers that the court must conclude that BML did not obtain the rights to the products at issue during the sale in Indiana.  According to Good Banana, BML's website, which directs consumers to purchase products on Amazon, amounts to sufficient business activity in the state.  It states that BML should reasonably expect its misappropriation of trade secrets and cease and desist letter to have consequences in Connecticut, and notes that BML also derives substantial revenue from its on-line sales in the state.

On March 31, 2021, BML filed additional support for the proposition that the concept of transacting business in Connecticut is not interpreted broadly.  It notes that communications alone, such as the cease and desist letter, do not rise to the level of transacting business.

Conn. Gen. Stat. § 52-59b provides that a plaintiff may
only be subject to jurisdiction for committing a tort outside of
Connecticut, that results in injury inside the state, if it

> "(A) regularly does or solicits business, or engages in any
> other persistent course of conduct, or derives substantial
> revenue from goods used or consumed or services rendered,
> in the state, or (B) expects or should reasonably expect
> the act to have consequences in the state and derives
> substantial revenue from interstate or international
> commerce. . . ."

§ 52-59b(a)(3)(A)-(B).   The Connecticut supreme court has
recognized that in determining whether a defendant transacted
business within the state pursuant to section 52-59b(1), a cause
of action against must "ar[i]se from [the defendant's] business
activity in this state." Ryan v. Cerullo*, 282 Conn. 109, 121-22
(2007); see also Bristol-Meyers Squibb Co. v. Superior Court of
California, 137 S. Ct 1773, 1781 (2017) (recognizing, in the
context of due process analysis of personal jurisdiction, that
"there must be an affiliation between the forum and the
underlying controversy, principally, [an] activity or an
occurrence that takes place in the forum State." (internal
quotation, quotation marks and brackets omitted)); Needle v.
True North Equity, LLC, 2020 WL 1550219, at *3 (D. Conn. April
1, 2020).   Further, "'[a] claim 'arises out of' a defendant's
transaction of business when there exists a substantial nexus
between the business transacted and the cause of action sued
upon.'"  Id. at 122 (quoting Agency Rent A Car Sys., Inc. v.

Grand Rent A Car Corp.*,* 98 F.3d 25, 31 (2d Cir.1996) (internal citations omitted) (interpreting N.Y. Civ. Prac. L. & R. § 302(a), upon which the Connecticut long-arm statute was modeled)).  In Ryan, the Connecticut supreme court also noted the requirement that under section 52-59b(3)(B), "the plaintiff's cause of action arise[] from [the defendant's] tortious act."  Id. at 123.

Even if this court were to conclude that Good Banana suffered an injury in Connecticut, it nonetheless fails to establish that "its cause of action arises from" BML's activity in the state.  Aside from the cease and desist letter, none of BML's alleged activity in Connecticut is related to the claims in this case.  Specifically, the two employees, one of whom has left Connecticut, were not involved with the products at issue, nor did any on-line sales in the state involve those products.  BML did not engage in business activities in Connecticut which relate to the alleged misappropriation of the trade secrets in question.  In fact, BML "has not developed, marketed or otherwise attempted to monetize the designs at issue within the [s]tate of Connecticut or anywhere yet for that matter."

With respect to the cease and desist letter that BML sent to Good Banana in Connecticut, courts have consistently recognized that such communications do not amount to sufficient business activity to support personal jurisdiction under

analogous state long-arm statues.  See Beacon Enterprises, Inc.
v. Menzies, 715 F.2d 757, 766 (2d Cir. 1983) (concluding that
the fact that the defendant sent cease and desist letter to the
plaintiff in New York was insufficient to support "transaction
of business" in the forum state, under the relevant long-arm
statute); Graphic Controls Corp. v. Utah Medical Products, Inc.,
149 F.3d 1382, 1387 (Fed. Cir. 1998) (holding that two cease and
desist letters were "of insufficient quality and degree to be
considered the 'transaction of business' under New York law
because they [did] not constitute the purposeful availment by
[the defendant] of the benefits and protections of New York
laws.").  This court has also recently recognized that
"[g]enerally, 'the transmission of communications between a non-
resident defendant and a party within the jurisdiction does not,
by itself, constitute the transaction of business in this
state.'"  Plimpton v. Bank of Jackson Hole, 3:20-CV-323 (VAB),
2021 WL 765243, at *14 (D. Conn. Feb. 26, 2021) (quoting
Callahan v. Wisdom, No. 3:19-CV-00350 (KAD), 2020 WL 2061882, at
*5 (D. Conn. Apr. 29, 2020) (quoting Vitale v. Catanese, No.
3:11-CV-1831 (MPS), 2013 WL 3992394, at *3 (D. Conn. Aug. 2,
2013) (citing cases))).[8]

---

[8] Further, in Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 513 (N.Y. App. 2007),
the New York Court of Appeals held, answering a question certified from the
second circuit, that under an analogous provision of the New York long-arm
statute, communications concerning the underlying lawsuit, sent to the

In short, the alleged injury of misappropriation cannot, and does not, arise from BML's contacts with Connecticut because BML has had virtually no contacts within the state that are related to that claim and the only related conduct is insufficient to support jurisdiction over BML.

## II. **Due Process**

Because the court concludes that BML's conduct does not satisfy Connecticut's long arm statute, it need not address the question whether jurisdiction over BML comports with due process requirements.[9]

**CONCLUSION**

Based upon the foregoing, the motion to dismiss (doc. no. 9) is GRANTED.  The request to conduct further discovery on the issue of personal jurisdiction and replead is denied.  The clerk is directed to close this case.

It is so ordered, this 6th day of July 2021, at Hartford, Connecticut.

/s/
_____
Alfred V. Covello,
United States District Judge

---

plaintiff in New York, failed to amount to transaction of business sufficient to support personal jurisdiction.

[9] In Best Van Lines, Inc. v. Walker, 490 F.3d 239 (2d Cir. 2007), the second circuit recognized that in states with long arm statutes that do not incorporate the due process requirement, like both New York and Connecticut, "[i]f, but only if," the court finds the long arm statute satisfied, the court "must then determine whether asserting jurisdiction under that provision would be compatible with requirements of due process . . . ." Id. at 242.